**HAGENS BERMAN SOBOL SHAPIRO LLP**
ELAINE T. BYSZEWSKI (SBN 222304)
elaine@hbsslaw.com
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

**ABNER & FULLERTON LLP**
ANTHONY L. ABNER (SBN 152052)
32565 Golden Lantern Blvd., Suite 216
Dana Point, California 92945
tonyabner@gmail.com
Telephone: (323) 839-3291
Facsimile: (323) 656-7155

*Attorneys for Plaintiffs*

(*Additional counsel listed on signature page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Arthur Sheridan, an individual, and Barbara Sheridan, an individual,  individually and on behalf of all others similarly situated,<br><br>                                        Plaintiffs,<br><br>        v.<br><br>iHeartMedia, Inc., a Delaware corporation,<br><br>                                        Defendant. | No. 2:15-cv-4067-PSG-GJS<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# I.   INTRODUCTION[1]

1.    A radio service must ensure that its internet-based and traditional broadcasts of copyrighted sound recordings are authorized, and must arrange to pay royalties before it publicly performs the sound recordings.  A radio service must also arrange to pay royalties to the owner of a sound recording each time the service reproduces the sound recording for purposes of archiving it, maintaining it, and streaming it online. If the radio service fails to arrange and pay required royalties, the use is unauthorized and infringes the sound recording's copyright. Further, the use of the names, voices, and likenesses of recording artists to promote illegal, unauthorized, and uncompensated broadcasts of sound recordings violates the recording owner's right to exploit those publicity rights. Although federal copyright law provides an automatic license and royalty rate for digital public performances of sound recordings created on or after February 15, 1972, no such automatic license exists for recordings created before that date. Instead, state law prohibits the unauthorized reproduction and performance of pre-1972 sound recordings.

2.    Arthur Sheridan and Barbara Sheridan (collectively, "Plaintiffs") are suing iHeartMedia, Inc. ("iHeartMedia" or "Defendant") for their unauthorized and unlawful use of sound recordings initially created before February 15, 1972 (the "Pre-1972 Recordings" or the "Recordings"), and the unauthorized exploitation of publicity rights held by or licensed to Plaintiffs in connection therewith.

3.    iHeartMedia has violated and continues to violate Plaintiffs' rights under California law through the marketing, sale, and provision of internet and terrestrial radio services that include Pre-1972 Recordings.[2] This practice unjustly enriches iHeartMedia at the expense of Plaintiffs and class members.

---

[1] Plaintiffs, by and through their attorneys, based on their individual experiences, make these allegations based on the investigation of counsel, and upon information and belief.

[2] Throughout this complaint, the term "internet radio" includes internet-based radio stations, including customizable radio stations, and online streaming of traditional AM/FM radio broadcasts.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

4.    iHeartMedia must pay royalties for the use of sound recordings created *on or after* February 15, 1972, which are copyrighted under the Copyright Act of 1976 (the "Copyright Act" or the "Act"). The Act does not, however, extend federal copyright to sound recordings created before February 15, 1972, but specifically provides that states remain free to create remedies for unauthorized use of those Pre-1972 Recordings.

5.    Despite its widespread public performance and reproduction of Pre-1972 Recordings protected by state law, iHeartMedia has failed to obtain authorization and pay royalties. Nor does iHeartMedia pay for the publicity rights associated with the use of artists' names, voices, and likenesses in the marketing and provision of its internet and terrestrial radio services.

6.    Pre-1972 sound recordings and the public images of the artists behind those recordings redefined popular music in America. iHeartMedia has earned substantial revenue by creating, marketing, and selling advertisements on radio services featuring Pre-1972 Recordings owned by Plaintiffs. But despite the fact that iHeartMedia profits handsomely by advertising and offering these sound recordings to the public, it unlawfully fails to arrange for permission to use (for compensation or otherwise) the sound recordings—or to pay for the use of the names, voices, and likenesses of the sound recording artists. iHeartMedia has traded on the rights of Plaintiffs and class members to enhance the revenue and popularity of its radio services.

7.    iHeartMedia's conduct violates Plaintiffs' rights under California's statutory and common law rights of publicity, as well as California statutory and common law prohibitions of misappropriation, unfair competition, and conversion. Plaintiffs seek, on behalf of themselves and a class of similarly situated rightholders, compensation from iHeartMedia as well as injunctive relief for violations of Plaintiffs' rights flowing from the unauthorized and uncompensated use of the Pre-1972 Recordings and publicity rights.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

## II.    JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1322(d), because at least one class member is of diverse citizenship from Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.

9.    The Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this Court's jurisdiction. This Court has personal jurisdiction over iHeartMedia, Inc., because iHeartMedia mass-solicits California customers through its interactive website iHeartRadio.com and on-air advertising. iHeartMedia owns dozens of radio stations throughout California, advertising its internet and terrestrial radio services and offering its mobile device application through these stations, including without limitation Los Angeles-based radio stations KOST 103.5-FM, KFI 640-AM, KRRL 92.3-FM, KIIS 102.7-FM, KLAC 570-AM, KEIB 1150-AM, and ALT 98.7-FM.  Each of these stations are well known and popular in the Los Angeles area. iHeartMedia frequently violates California law to the detriment of Plaintiffs, class members, and listeners, as detailed below, by publicly performing Pre-1972 Recordings in California without arranging or paying royalties.

10.    Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District and iHeartMedia has caused harm to class members residing in this District.

## III.    PARTIES

11.    Plaintiff Arthur Sheridan is a citizen of Illinois and record producer who owns the intellectual property and contract rights in numerous pre-1972 master recordings. Arthur Sheridan possesses licenses to use the publicity rights of recording artists to promote the Pre-1972 Recordings that he owns.

12.    Plaintiff Barabara Sheridan is a citizen of Illinois and owns the intellectual property and contract rights in a pre-1972 master recording. Barbara Sheridan possesses a

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

license to use the publicity rights of recording artists to promote the Pre-1972 Recording that she owns.

13.   iHeartMedia, Inc., is a Delaware corporation with its principal place of business in Texas.

14.   With respect to the right of publicity and related claims, Plaintiffs bring this action individually and on behalf of the Publicity Rights Class as defined below.

15.   With respect to all other claims, Plaintiffs bring this action individually and on behalf of the Misappropriation Class as defined below.

### IV.   FACTUAL BACKGROUND

#### A.   Arthur and Barbara Sheridan

16.   In the 1950s and 1960s, Arthur Sheridan owned and operated several recording companies specializing in recording and selling doo-wop, jazz, and rhythm and blues music. These music labels produced recordings by some of the most influential musicians of the era, including the Flamingos (inducted to the Rock and Roll Hall of Fame in 2001), Little Walter (inducted to the Blues Hall of Fame in 1986 and the Rock and Roll Hall of Fame in 2008), and the Moonglows (inducted to the Vocal Group Hall of Fame in 1999 and the Rock and Roll Hall of Fame in 2000).

17.   Arthur Sheridan owns many pre-1972 master recordings, including but not limited to the following fixtures of jazz, blues, and doo-wop music: "Slow Down Woman," "The Mojo," "I Want my Baby," and "How Can I Leave" by J.B. Lenoir; "That's my Dear" and "You Ain't Ready" by The Flamingos; "Evening Sun" by Johnny Shines; "Love is a Pain," and "No Need of Your Crying," "I Had a Feeling" and "Meet Me Baby" by Rudy Greene; "Nervous Wreck" and "No More Love" by Willie Nix; "Lonely Christmas," "Whistle My Love," "Baby Please," and "Hey Santa Claus" by The Moonglows; "She's Gonna Ruin Me" and "I Can't Stand Being Away From You" by T-Bone Walker; "Just Keep Loving Her" by Little Walter; "Merry Lee," "Down Home," "Sweet and Lovely," and "Talk of the

Town" by Howard McGhee; and "High and Lonesome" and "Roll and Rhumba" by Jimmy Reed.

18.  Barbara Sheridan owns the pre-1972 master sound recording of "Golden Teardrops" by The Flamingos, critically acclaimed when it was recorded and still regarded as a classic.

19.  Arthur and Barbara Sheridan own the intellectual property and contract rights associated with the recordings. These rights include, without limitation, the right to control the use and distribution of the recording, the right to use the publicity rights, including the well-known voices, names, images, and likenesses of the associated recording artists such as the Flamingos and Little Walter, to promote the recordings, and the right to receive royalty payments from the exploitation of the master recordings described above. The publicity rights of the recording artists behind the recordings are valuable and highly sought-after by commercial entities.

20.  Arthur and Barbara Sheridan continue to market the Pre-1972 Recordings that they own. In particular, Arthur and Barbara Sheridan continue to receive revenue from licenses granted to third parties to publicly perform the recordings.

**B.    iHeartMedia Exploits Plaintiffs' and Class Members' Rights Without Permission or Compensation**

*1.    State Law Protection for Pre-1972 Recordings*

21.  The Copyright Act creates a federal statutory licensing scheme pursuant to which internet radio companies such as iHeartMedia are required to pay royalties for the public performance of sound recordings protected by the Act. *See* 17 U.S.C. §§ 112(e), 114(d)(2), 114(f).  The companies pay these royalties to SoundExchange, a nonprofit entity established by regulation for the collection and distribution of royalty payments under this scheme.

22.  The statutory licensing scheme provided by 17 U.S.C. §§ 112(e), 114(d)(2), and 114(f) does not extend to Pre-1972 Recordings. Thus, SoundExchange's authority does not extend to the collection and distribution of royalty payments to the owners of copyrights in

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

Pre-1972 Recordings. *See* 17 U.S.C. § 114(g)(2) (requiring SoundExchange to distribute royalties to holders of federal copyrights). The existence of SoundExchange does not alter the issues presented in this action because SoundExchange has no authority to negotiate or collect royalties on behalf of copyright holders for the reproduction and public performance of Pre-1972 Recordings.

23.   The Copyright Act specifically provides that Pre-1972 Recordings will not be subject to federal copyright. 17 U.S.C. § 301(c). But nothing in the Copyright Act permits entities such as iHeartMedia to make use of Pre-1972 Recordings without compensation, or to exploit the names, voices, or likenesses of persons connected with Pre-1972 Recordings without authorization in order to market, sell advertising on, and provide terrestrial and internet radio services. Indeed, the Copyright Act specifically left states free to regulate the use of works of authorship that it chose not to render subject to federal law. 17 U.S.C. § 301(b)(1).

24.   California statutory and common law protects Pre-1972 Recordings from being copied, distributed, or otherwise exploited without license or authorization. In particular, California Civil Code § 980(a)(2) provides as follows:

> The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein until February 15, 2047, as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording.

25.   Accordingly, California Civil Code § 980(a)(2) controls the right to perform Plaintiffs' pre-1972 master recordings.

### 2.   iHeartMedia

26.   Operating under the name iHeartRadio, iHeartMedia offers internet radio services in the form of customizable music "stations" that stream music to users on the internet.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

iHeartMedia also owns hundreds of traditional ("terrestrial," or AM and FM) radio stations and streams their broadcasts online.

27.   iHeartMedia offers its internet radio services to the public on a non-subscription basis. Users can access iHeartMedia's internet radio services on a variety of internet platforms including computers, digital media devices, tablets, video game consoles, and smartphones.

28.   Users of iHeartMedia's customizable stations hear advertisements at periodic intervals between tracks, and may skip only six tracks per station per hour (and fifteen tracks total per day) across all stations. Skipping a track often results in hearing an advertisement.

29.   iHeartRadio's numerous internet and terrestrial radio broadcasts have included, and continue to include, countless public peformances of Pre-1972 Recordings, all of which have been and continue to be made without any permission from or payment to the owners of the copyright in the Recordings.

30.   Moreover, in the course of broadcasting internet and terrestrial radio services that feature Pre-1972 Recordings, iHeartRadio reproduces those Recordings multiple times for purposes of archiving, advertising, buffering, streaming, and otherwise maintaining, accessing, and performing the Recordings.

31.   iHeartRadio's internet radio service is delivered by way of web interfaces that promote iHeartMedia's services or are designed to attract users to iHeartMedia's services.

32.   iHeartMedia also sells the right to advertise to users on its stations, websites, and applications.

33.   iHeartMedia's internet and terrestrial radio services can be accessed throughout the United States, including California. As of June 2015, iHeartMedia reports having over 70 million registered users of its internet radio service. In addition, millions of other users access iHeartMedia's streamed and AM/FM broadcasts of traditional radio stations without

1   registering. Upon information and belief, millions of iHeartMedia users and listeners are

2   located in California.

3       34.   Sales of advertisements displayed or broadcast in the course of iHeartMedia's

4   internet and terrestrial radio services generate millions of dollars of revenue for

5   iHeartMedia each year.

6       35.   iHeartMedia regularly broadcasts to California listeners the "Golden Teardrops"

7   recording and other recordings listed above, as well as many other Pre-1972 Recordings,

8   and has done so repeatedly for the last several years.

9       36.   iHeartMedia has not licensed Pre-1972 Recordings from their copyright owners.

10      37.   The Pre-1972 Recordings played by iHeartMedia exploit Plaintiffs' and class

11   members' rights of publicity in the voices of the artists featured in those Recordings.

12      38.   In addition to broadcasting their voices, iHeartMedia displays on its website the

13   names and likenesses of those artists featured in Pre-1972 Recordings. Pre-1972 Recording

14   artists' names and likenesses appear on web interfaces which promote iHeartMedia's

15   services or are designed to attract users to iHeartMedia's services.

16      39.   But with respect to Pre-1972 Recordings, iHeartMedia has not licensed the right to

17   use recording artists' names, voices, or likenesses in the provision and marketing of its

18   services, and it does so without permission from or compensation to those recording artists.

19      40.   Thus, without obtaining authorization or rendering compensation, iHeartMedia has

20   copied and publicly performed Pre-1972 Recordings in violation of Plaintiffs' exclusive

21   rights to perform the Recordings. iHeartMedia has further violated Plaintiffs' rights to

22   promote lawful reproduction, public performance, and other uses of the Pre-1972

23   Recordings using the names, voices, and likenesses of recording artists.

24      41.   iHeartMedia has derived significant benefits, including millions of dollars of

25   revenue, from unlawfully exploiting these rights.

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
                                             Case No.: 2:15-cv-4067-PSG-GJS

# V.    CLASS ACTION ALLEGATIONS

## A.    Misappropriation Class Allegations

42.    Plaintiffs Arthur and Barbara Sheridan bring this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on their own behalf and on behalf of the following class of plaintiffs (the "Misappropriation Class"):

> All owners of reproduction and public performance rights in Pre-1972 Recordings that have been publicly performed, copied, or otherwise exploited by iHeartRadio, without a license or other authorization, in the marketing, sale, and provision of internet and terrestrial radio services.

43.    The persons in the Misappropriation Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the Misappropriation Class is easily ascertainable, as each class member can by identified by using iHeartMedia's records. Plaintiffs are informed and believe that there are many thousands of Misappropriation Class members.

44.    There are common questions of law and fact specific to the Misappropriation Class that predominate over any questions affecting individual members, including:

(a)   Whether iHeartMedia copies, publicly performs, or otherwise exploits Pre-1972 Recordings in its internet and terrestrial radio services without authorization or permission;

(b)   Whether such uses are unlawful;

(c)   Whether iHeartMedia's conduct violates California Civil Code § 980(a)(2);

(d)   Whether iHeartMedia's conduct constitutes misappropriation;

(e)   Whether iHeartMedia's conduct constitutes unfair competition;

(f)   Whether iHeartMedia's conduct constitutes conversion;

(g)   Whether class members have been damaged by iHeartMedia's conduct, and the amount of such damages;

(h)   Whether treble damages are appropriate and the amount of such damages;

(i)   Whether punitive damages are appropriate and the amount of such damages;

(j)   Whether statutory damages are appropriate and the amount of such damages;

(k)   Whether an order enjoining future unauthorized use of Pre-1972 Recordings in internet and terrestrial radio services is appropriate and on what terms;

(l)   Whether iHeartMedia has been unjustly enriched; and

(m) Whether iHeartMedia should disgorge its unlawful profits, and the amount of such profits.

45.   Plaintiffs' claims are typical of the Misappropriation Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Misappropriation Class, and Plaintiffs challenge the practices and course of conduct engaged in by iHeartMedia with respect to the Misappropriation Class as a whole.

### B.   Publicity Rights Class Allegations

46.   Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) on their own and on behalf of the following class of plaintiffs (the "Publicity Rights Class"):

> All owners of rights of publicity—including, without limitation, the rights to control, license, limit, or otherwise exploit the use of the name, voice, photograph, or likeness—of any person, living or dead, who performed in Pre-1972 Recordings that were used by iHeartMedia, and whose rights of publicity were used by iHeartMedia without a license or other authorization, in the marketing, sale, and provision of internet and terrestrial radio services.

47.   The persons in the Publicity Rights Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the Publicity Rights Class is easily ascertainable, as each class member can be identified by using iHeartMedia's records. Plaintiffs are informed and believe that there are many thousands of Publicity Rights Class members.

48.   There are common questions of law and fact specific to the Publicity Rights Class that predominate over any questions affecting individual members, including:

(a)  Whether iHeartMedia utilizes the names, voices, photographs, or likenesses of any person performing in a Pre-1972 Recording;

(b)  Whether such uses are unlawful;

(c)  Whether iHeartMedia's conduct violates California Civil Code §§ 3344 and 3344.1;

(d)  Whether iHeartMedia's conduct constitutes unfair competition;

(e)  Whether class members have been damaged by iHeartMedia's conduct and the amount of such damages;

(f)  Whether treble damages are appropriate and the amount of such damages;

(g)  Whether punitive damages are appropriate and the amount of such damages;

(h)  Whether statutory damages are appropriate and the amount of such damages;

(i)  Whether an order enjoining future violations of publicity rights is appropriate and on what terms;

(j)  Whether iHeartMedia has been unjustly enriched; and

(k)  Whether iHeartMedia should disgorge its unlawful profits and the amount of such profits.

49.   Plaintiffs' claims are typical of the Publicity Rights Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Publicity Rights Class, and Publicity Rights Plaintiffs challenge the practices and course of conduct engaged in by iHeartMedia with respect to the Class as a whole.

### C.   Allegations Pertaining to Both Classes

50.   Excluded from both classes are iHeartMedia, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and associated court staff assigned to this case.

51.   Plaintiffs will fairly and adequately protect the interests of both classes. They will vigorously pursue the claims and have no antagonistic conflicts. Plaintiffs have retained counsel who are able and experienced class action litigators and are familiar with representing plaintiffs in large-scale copyright, trademark, and right of publicity claims.

52.   iHeartMedia has acted or refused to act on grounds that apply generally to both classes, and final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. A class action is also appropriate because iHeartMedia has acted and refused to take steps that are, upon information and belief, generally applicable to thousands of individuals, thereby making injunctive relief appropriate with respect to both classes as a whole.

53.   Questions of law or fact common to class members predominate over any questions affecting only individual members. Resolution of this action on a class-wide basis is superior to other available methods and is a fair and efficient adjudication of the

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

controversy because in the context of this litigation no individual class member can justify the commitment of the large financial resources to vigorously prosecute a lawsuit against iHeartMedia. Separate actions by individual class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of class members to pursue their claims. It is not anticipated that there would be difficulties in managing this case as a class action.

54.    Plaintiffs reserve the right to amend all class allegations as appropriate, and to request any state law subclasses or other subclasses if necessary, upon completion of class-related discovery and motions for class certification.

**COUNT I**
**(Violation of Cal. Civ. Code § 980(a)(2),**
**Common Law Misappropriation, Common-Law Unfair Competition)**

55.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

56.    Plaintiffs, the Misappropriation Class, and/or their predecessors-in-interest spent substantial time, skill, effort and money to create the Pre-1972 Recordings, and Plaintiffs and the Misappropriation Class have property interests in them as recognized by Cal. Civ. Code § 980(a)(2) and California common law.

57.    By duplicating the Pre-1972 Recordings without authorization from Plaintiffs and Class Members, and publicly performing those Recordings to its users for its own gain, iHeartMedia engaged in the misappropriation of the Plaintiffs' and Class Members' valuable work product and/or intellectual property rights, whereby iHeartMedia profited to the disadvantage of the Plaintiffs and Class Members, who have been and continue to be injured by iHeartMedia's conduct.

58.    As a result of iHeartMedia's misappropriation of the Pre-1972 Recordings, Plaintiffs and Class Members are entitled to an order enjoining iHeartMedia from continuing to use those recordings without authorization and compensation, and to an order

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

imposing a constructive trust on any money acquired by means of iHeartMedia's misappropriation, including all gross receipts attributable to iHeartMedia's misappropriation of the Pre-1972 Recordings.

59.   iHeartMedia's conduct, as described above, constituted a continuous and intentional pattern of misappropriation of Plaintiffs' and Class Members' property, justifying the imposition of punitive damages. iHeartMedia is a high-profile, large-scale media company that is intimately familiar with the mechanics of the music industry and the requirements of intellectual property law. By knowingly misappropriating works without their owners' permission and performing these works to millions of users of internet and terrestrial radio services, iHeartMedia acted and continues to act despicably and to demonstrate a conscious intent to injure Plaintiffs and Class Members by depriving them of compensation for the use of the Pre-1972 Recordings. iHeartMedia's continued misappropriation of the Pre-1972 Recordings was in conscious and willful disregard of Plaintiffs' and Class Members' ownership rights in those Recordings.

## COUNT II
## (Conversion)

60.   Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

61.   Plaintiffs and the Misappropriation Class are the owners of the Pre-1972 Recordings, and have an intangible property interest in them as recognized by California Civil Code § 980(a)(2).

62.   By its conduct described above, iHeartMedia wrongfully converted those rights and interests for its own use and profit.

63.   By its conduct described above, iHeartMedia engaged in a wrongful, unpermitted exercise of control over the property of Plaintiffs and Class Members. As a result, Plaintiffs and Class Members lost control over their rightful property and did not receive compensation for the use of their valuable sound recordings, and were thereby damaged.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

64.   As a result of iHeartMedia's conversion of the Pre-1972 Recordings, Plaintiffs and Class Members are entitled to an order enjoining iHeartMedia from continuing to use those recordings without authorization and compensation, and to an order imposing a constructive trust on any money acquired by means of iHeartMedia's conversion, including all gross receipts attributable to iHeartMedia's conversion of the Pre-1972 Recordings.

65.   iHeartMedia is a high-profile, large-scale media company, intimately familiar with the mechanics of the music industry and the requirements of intellectual property law. By knowingly converting works without their owners' permission and publicly performing these works to millions of users of internet and terrestrial radio services, iHeartMedia acted and continues to act despicably and to demonstrate an intent to injure Plaintiffs and Class Members by depriving them of compensation for the use of the Pre-1972 Recordings. iHeartMedia's conversion of the Pre-1972 Recordings was in conscious and willful disregard of the Plaintiffs' and Class Members' ownership rights in those Recordings.

### COUNT III
### (Violation of Rights of Publicity Under Cal. Civ. Code §§ 3344 and 3344.1)

66.   Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

67.   iHeartMedia has knowingly and intentionally used and continues to use the publicity rights of Plaintiffs and the Publicity Rights Class, including names, voices, and likenesses, for the purposes of advertising iHeartMedia's internet and terrestrial radio services; providing those radio services; selling advertisements on those radio services; and/or advertising and selling other products and services.

68.   iHeartMedia is a high-profile, large-scale media company, intimately familiar with the mechanics of the music industry and the law governing rights of publicity. iHeartMedia's actions, as described herein, were committed maliciously, intentionally, fraudulently and with a willful and conscious disregard of the rights of Plaintiffs and the Publicity Rights Class, making an award of punitive damages appropriate in order to punish and deter iHeartMedia from continuing to engage in the conduct alleged herein.

69.   As a result of iHeartMedia's violation of their publicity rights, Plaintiffs and the Publicity Rights Class have been injured.

## COUNT IV
### (Violation of Rights of Publicity Under California Common Law)

70.   Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

71.   iHeartMedia has utilized and continues to utilize names, voices, and/or likenesses of recording artists associated with the Pre-1972 Recordings in iHeartMedia's internet and terrestrial radio services.

72.   iHeartMedia has intentionally used and continues to use names, voices, and likenesses of recording artists associated with the Pre-1972 Recordings with full and complete knowledge that its use of such rights was unauthorized and without prior license or consent.

73.   iHeartMedia has used and continues to use names, voices, and likenesses of recording artists associated with the Pre-1972 Recordings for its own commercial advantage as a means of generating interest in and profits for iHeartMedia's internet and terrestrial radio services.

74.   Plaintiffs hold licenses to promote the Pre-1972 Recordings using the names, voices, and/or likenesses of recording artists associated with the Pre-1972 Recordings.

75.   iHeartMedia's actions, as described herein, were committed maliciously, intentionally, fraudulently, and with a willful and conscious disregard of Plaintiffs' and the Publicity Rights Class's rights, making an award of punitive damages appropriate in order to punish and deter iHeartMedia from engaging in the conduct alleged herein.

**76.**   As a result of iHeartMedia's misappropriation of valuable publicity rights, Plaintiffs and the Publicity Rights Class have been injured.

**COUNT V**
**(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 *et seq.*)**

77.   Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

78.   iHeartMedia's conduct, as alleged above, constituted and constitutes an unlawful and unfair business practice in violation of Section 17200, *et seq.*, of the California Business and Professions Code.

79.   The conduct is unlawful because, among other things, it violates California Civil Code §§ 980(a)(2) as well as §§ 3344 and 3344.1.

80.   Defendant's business practices are unfair because they offend established public policy tethered to specific statutory provisions, as set forth above, and are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers, which harm greatly outweighs any benefit associated with the business practice.

81.   iHeartMedia's misappropriation of the Pre-1972 Recordings is immoral, unethical, unscrupulous, and offensive to California's established public policy of protecting the owners of sound recordings not covered under federal copyright from unauthorized use of those sound recordings. iHeartMedia's misappropriation of rights of publicity in violation of Plaintiffs' rights is likewise immoral, unethical, unscrupulous, and offensive to California's established public policy of protecting the right of individuals to control the commercial use and exploitation of their names, voices, photographs, and likenesses. iHeartMedia's conduct has little or no social utility, but serves only to enrich iHeartMedia at the expense of grave harm to Plaintiffs and Class Members. iHeartMedia's unlawful conduct further misleads the public as to the legality of the services iHeartMedia provides and gives iHeartMedia an unfair competitive advantage in the market for internet and terrestrial radio services and advertising.

82.   iHeartMedia's misappropriation of the Pre-1972 Recordings and violation of Plaintiffs' rights to use the publicity rights of recording artists associated with the Pre-1972 Recordings has caused Plaintiffs and Class Members substantial injury, including without

1   limitation foregone licensing opportunities and royalty payments, that could not have been

2   avoided by Plaintiffs and Class Members, and that is not outweighed by any benefit to

3   consumers or competition.

4       83.   iHeartMedia's misappropriation of the Pre-1972 Recordings and violation of

5   Plaintiffs' rights to use the publicity rights of recording artists associated with the Pre-1972

6   Recordings has further caused and is causing irreparable injury to Plaintiffs and Class

7   Members. Plaintiffs and Class Members are therefore entitled to an order enjoining

8   iHeartMedia from continuing to use the Recordings without authorization and

9   compensation, and to an order requiring iHeartMedia to make restitution of and disgorge

10   any money acquired by means of iHeartMedia's conduct, including all gross receipts

11   attributable to iHeartMedia's misappropriation of the Pre-1972 Recordings and rights of

12   publicity held by Plaintiffs and Class Members. Plaintiffs and Class Members are further

13   entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure

14   § 1021.5.

15   **COUNT VI**
    **(Unjust Enrichment)**

16

17       84.   Plaintiffs incorporate by reference the allegations in the above paragraphs as if

    fully set forth herein.

18       85.   To the detriment of Plaintiffs and the Class, iHeartMedia has been and continues to

19   be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged

20   herein. iHeartMedia has unjustly benefitted through the sale of advertisements in

21   connection with its internet and terrestrial radio services that use without authorization the

22   Pre-1972 Recordings and the publicity rights contained therein, and has also used such

23   publicity rights in the advertising and marketing of those services—leveraging for profit the

24   hard-earned fame and reputation of Plaintiffs and the Class.  iHeartMedia has therefore

25   benefitted from the use of Pre-1972 Recordings, as well as the name, voice, and likeness

26   rights of Plaintiffs and the Publicity Rights Class.

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

86.   The publicity rights of Plaintiffs and the Publicity Rights Class also have considerable commercial value, deriving from Plaintiffs' and Class Members' stature and fame in American popular culture.

87.   iHeartMedia has intentionally used and continues to use Pre-1972 Recordings owned by Plaintiffs and Misappropriation Class Members without license or authorization. iHeartMedia has intentionally used and continues to use names, voices, and likenesses of recording artists associated with the Pre-1972 Recordings without Plaintiffs' or Class Members' consent.

88.   It would be unjust for iHeartMedia to retain the benefits attained by its unlicensed and wrongful use of the Plaintiffs' Recordings and violations of Plaintiffs' rights to use the publicity rights of recording artists associated with the Pre-1972 Recordings. Accordingly, Plaintiffs seek, on behalf of themselves and the Publicity Rights Class, full restitution of iHeartMedia's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## MISAPPROPRIATION PRAYER FOR RELIEF

89.   WHEREFORE, on its own behalf and on behalf of the Misappropriation Class, Plaintiffs pray for judgment against iHeartMedia as follows:

(a)   Certification of the action as a Class Action pursuant to the Federal Rules of Civil Procedure, and appointment of Plaintiffs as the Class Representatives and their counsel of record as Class Counsel;

(b)   Actual damages, statutory damages, punitive damages, and such other relief as provided by the statutes and common law cited herein;

(c)   Disgorgement of all profits earned by iHeartMedia from copying publicly performing, and otherwise exploiting Pre-1972 Recordings in internet and terrestrial radio services;

(d)   A constructive trust on any money acquired by means of iHeartMedia's conversion, including all gross receipts attributable to iHeartMedia's conversion of the Pre-1972 Recordings;

(e)   Prejudgment and post-judgment interest on any monetary relief;

(f)   Equitable relief enjoining future unauthorized use of Pre-1972 Recordings in internet and terrestrial radio services;

(g)   The costs of bringing this suit, including reasonable attorneys' fees; and

(h)   All other relief to which Plaintiffs and class members may be entitled at law or in equity.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

**RIGHT OF PUBLICITY PRAYER FOR RELIEF**

90.   WHEREFORE, on its own behalf and on behalf of the Publicity Rights Class,

Plaintiffs pray for judgment against iHeartMedia as follows:

(a)  Certification of the action as a Class Action pursuant to the Federal Rules of Civil Procedure, and appointment of Plaintiffs as the Class Representatives and their counsel of record as Class Counsel;

(b)  Actual damages, statutory damages, punitive damages, and such other relief as provided by the statutes and common law cited herein;

(c)  Disgorgement of all profits earned by iHeartMedia from the marketing, sale, and provision of internet and terrestrial radio services using names, voices, photographs, and likenesses of recording artists associated with the Pre-1972 Recordings;

(d)  A constructive trust on any money acquired by means of iHeartMedia's violation of Plaintiffs' rights to use publicity rights, including all gross receipts attributable to iHeartMedia's performance of the Pre-1972 Recordings;

(e)  Prejudgment and post-judgment interest on such monetary relief;

(f)  Equitable relief in enjoining future violations of publicity rights associated with the Pre-1972 Recordings in iHeartMedia's internet and terrestrial radio services;

(g)  The costs of bringing this suit, including reasonable attorneys' fees; and

(h)  All other relief to which Plaintiffs and class members may be entitled at law or in equity.

**DEMAND FOR JURY TRIAL**

91.   Plaintiffs demand a trial by jury on all issues so triable.

DATED:  August 17, 2015

**HAGENS BERMAN SOBOL SHAPIRO LLP**


By:   /s/ Steve W. Berman

STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

ELAINE T. BYSZEWSKI (SBN 222304)
elaine@hbsslaw.com
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS

1 ROBERT B. CAREY (*pro hac vice pending*)
rob@hbsslaw.com
2 JOHN M. DESTEFANO (*pro hac vice pending*)
johnd@hbsslaw.com
3 11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
4 Telephone: (602) 840-5900
Facsimile: (602) 840-3012
5
**ABNER & FULLERTON LLP**
6 ANTHONY L. ABNER (SBN 152052)
32565 Golden Lantern Blvd., Suite 216
7 Dana Point, California 92945
tonyabner@gmail.com
8 Telephone: (323) 839-3291
Facsimile: (323) 656-7155
9
**FOSTER P.C.**
10 HOWARD W. FOSTER (*pro hac vice*)
hfoster@fosterpc.com
11 MATTHEW GALIN (*pro hac vice*)
mgalin@fosterpc.com
12 150 North Wacker Dr.
Suite 2150
13 Chicago, IL 60606
Telephone: (312) 726-1600
14 Facsimile: (866) 470-5738
15
**THE LAW OFFICE OF JUSTIN SOBODASH**
16 Justin Sobodash (SBN 217450)
Justin@Sobodashlaw.com
17 8335 West Sunset Blvd., Suite 302
West Hollywood, California 90069
18 Telephone: (323) 337-9010
Facsimile: (323) 656-7155
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED CLASS ACTION COMPLAINT
                                        Case No.: 2:15-cv-4067-PSG-GJS

1

## **CERTIFICATE OF SERVICE**

2

3         I, Steve W. Berman, hereby certify that on August 17, 2015, a true and correct copy

4    of the foregoing document was filed electronically with the Clerk of Courts at my direction

5    using the CM/ECF system, which will send notification of such filing to all counsel of

6    record.

7                                   /s/ Steve W. Berman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
Case No.: 2:15-cv-4067-PSG-GJS